IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

15 SEP 30  PM 2: 10

CLERK-ALBUQUERQUE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE ELECTRONIC MEMORY OF THE KYOCERA MODEL E-6782 CELLULAR TELEPHONE BEARING CONTAINED IN A SELF SEALING EVIDENCE ENVELOPE #S000282485, CURRENTLY LOCATED AT DRUG ENFORCEMENT ADMINISTRATION ALBUQUERQUE DISTRICT OFFICE | Case No. 15 MR 603 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH AND SEIZE**

I, Clarence Davis, Task Force Officer of the Drug Enforcement Administration (DEA), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device – which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Task Force Officer of the United States Drug Enforcement Administration (DEA) assigned to the Albuquerque District Office. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have

been a Task Force Officer for a total of four years. I have been a certified law enforcement officer within the state of New Mexico for the past twenty-eight years.

3. My experience as a police officer includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working undercover, as well as working with informants. I have received training in, and have experience in, the investigation of violations of the federal drug and money laundering laws, including the offenses listed below. I have participated in the investigation of numerous drug trafficking conspiracies, including multiple Title III investigations. I have also participated in complex investigations that required the analysis of tolls and data from pen registers. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations ("DTOs") to purchase, transport, store and distribute drugs, and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

4. Through my training and experience, I have learned that:

   a. Drug traffickers often conceal names, addresses, telephone numbers, email addresses, or other pertinent codes and other information including contact information for their current or past illegal drug source(s) of supply, customers, or criminal associates in the electronic memory of their telephones/ personal digital assistants (PDA);

   b. Drug traffickers often conceal photographs of drugs, vehicles, locations, or photographs of drug associates and other drug records in the electronic memory of their telephones/PDAs;

    c. Drug traffickers often communicate with their illegal drug source(s) of supply, customers, or criminal associates by text messaging and/or email from their cellular telephones/ PDAs. Accordingly, pertinent text and/or email messages regarding drug trafficking are often stored in the electronic memory of the cellular telephone/ PDA; and

    d. Drug traffickers must maintain and have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business. As such, they often store bank account information, drug ledgers, or lists of where assets are stored in the electronic memory of the cellular telephone/ PDA.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is black in color, Kyocera smartphone, model E-6782, contained in self-sealing evidence envelope # S000282485, hereinafter referred to as the "Device." The Device is currently located at the DEA Albuquerque District Office.

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. On August 26, 2015, Law Enforcement Officers with the Socorro Police Department served a State of New Mexico District Court Search Warrant at 603 Reservoir

Street, Socorro, New Mexico (603 Reservoir Street). This search warrant authorized a search of the residence to recover items of stolen property.

9. 603 Reservoir Street was identified by members of the Socorro Police Department as being the primary residence of Joel MARTINEZ and his girlfriend, Joselyn BUSTAMANTE; however two additional adults were present in the home at the time of the search warrant service.

10. Officers of the Socorro Police Department located numerous items of stolen property in the home.

11. During the search of the residence, Socorro Police Officer, Carlos Valenzuela encountered a locked Snap On Brand tool box in the living room of the home. Officer Valenzuela advised me, he located keys to the toolbox on a keychain belonging to MARTINEZ.

12. Officer Valenzuela advised upon opening the toolbox, that he observed what appeared to be approximately one pound of suspected methamphetamine and a digital scale for weighing small amounts.

13. Based on the suspected drugs located within the home, Law Enforcement Officers from Region 1 Task Force and DEA responded to the location and subsequently a federal search warrant was obtained authorizing a search of the premises for illegal drugs and related evidence.

14. A federal search warrant was granted and was signed by United States Magistrate Judge, Steven C. Yarbrough. This warrant authorized the search of the home for illegal drugs as well as electronic devices to include; cellular phones, any and all paging devices, and other communication devices, electronic medium, and computers, computer software, and peripherals.

15. On August 26, 2015, at approximately 5:30 p.m., Law Enforcement Officers with Region 1 Task Force and DEA served the previously mentioned search warrant.

16.     During the search of the home, agents located and seized suspected over 300 grams of suspected methamphetamine as well several items of evidence to include, but not limited to; two digital scales, a suspected drug ledger, four cellular phones, one Apple IPod, and a digital video recorder.

17.     Based on evidence located at 603 Reservoir Street, I met with MARTINEZ and advised him of his rights per Miranda. MARTINEZ verbally acknowledged he understood his rights and exercised his right to remain silent.

18.     I then met with Joselyn BUSTAMANTE and advised her of her rights per Miranda, which she acknowledged she understood. BUSTAMANTE agreed to waive her rights, and signed a Waiver of Rights Form.

19.     During my interview with BUSTAMANTE she advised she and MARTINEZ lived at 603 Reservoir Street.

20.     BUSTAMANTE also identified a "Verizon" cellular phone as being owned by MARTINEZ.

21.     Based on the above mentioned details, the Device is believed to contain information relating to the drug trafficking described above and of other drug trafficking MARTINEZ and BUSTAMANTE may have been involved in. This information could include, but is not limited to:

    a. Lists of customers and related identifying information;

    b. Types, amounts, and prices of drugs trafficked, as wells as dates, places, and amounts of specific transactions;

    c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

  d. All bank records, checks, credit card bills, account information, and other financial records and other drug records.

22.  The Device is currently in storage at the DEA Albuquerque District Office. In my training and experience, I know that the Device has been securely stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DEA.

## TECHNICAL TERMS

23.  Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or video.

c. Portable media player: A portable media player (or "MP3 Player" or "iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the location where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved

in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each Satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS" technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet,

connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a "wireless telephone, digital camera, portable media player, GPS navigation device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered thru forensic examination.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion on to a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

28. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Clarence Davis
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
On September ~~16~~ 30, 2015:

_____
Steven C. Yarbrough
United States Magistrate Judge

## ATTACHMENT B

### Particular Things to be Seized

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846 involving Joel MARTINEZ and/or Joselyn BUSTAMANTE including:

    a. Lists of customers and related identifying information;

    b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. All bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

## ATTACHMENT A

**Property to Be Searched**

The property to be searched is a black in color, Kyocera smartphone, Model E-6782, contained in self-sealing evidence envelope #S000282485, hereinafter referred to as the "Device." The Device is currently located at the DEA Albuquerque District Office.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.